ACCEPTED
15-24-00102-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
12/18/2024 9:31 AM
CHRISTOPHER A. PRINE
CLERK

**No. 15-24-00102-CV**

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
12/18/2024 9:31:43 AM
CHRISTOPHER A. PRINE
Clerk

# IN THE COURT OF APPEALS
## FOR THE FIFTEENTH JUDICIAL DISTRICT
## AUSTIN, TEXAS

_____

Texas State Board of Veterinary Medical Examiners and Brittaney Sharkey, Solely in Her Official Capacity as Executive Director of the Texas State Board of Veterinary Medical Examiners,

*Appellants*,

*v.*

Shawn Messonnier, DVM,

*Appellee.*

_____

On Appeal from the
98th Judicial District Court, Travis County

_____

**Appellants' Brief on the Merits**

_____

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney
General

JAMES LLOYD
Deputy Attorney General for Civil
Litigation

ERNEST C. GARCIA
Chief, Administrative Law Division

December 18, 2024

Ted A. Ross
Assistant Attorney General
State Bar No. 24008890
OFFICE OF THE TEXAS ATTORNEY GENERAL
ADMINISTRATIVE LAW DIVISION
P. O. Box 12548
Austin, Texas 78711-2548
Telephone: (512) 475-4191
Email: ted.ross@oag.texas.gov

ATTORNEYS FOR APPELLANTS

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ................................................................ v

REFERENCES TO THE RECORD AND ABBREVIATIONS ..................... vii

IDENTITY OF PARTIES AND COUNSEL ................................................. viii

STATEMENT OF THE CASE ....................................................................1

STATEMENT REGARDING ORAL ARGUMENT ...................................... 2

ISSUE PRESENTED .............................................................................. 2

STATEMENT OF FACTS ........................................................................ 2

SUMMARY OF THE ARGUMENT ............................................................. 5

ARGUMENT AND AUTHORITIES ........................................................... 7

I.      Dr. Messonnier is not entitled to declaratory relief. .............................. 7

    A.    The complaints lodged against Dr. Messonnier are strictly
        confidential under Texas law, and there are no exceptions............ 7

    B.    Dr. Messonnier has not been denied due process of law................ 8

        1. Informal conferences are not adjudicatory proceedings
           in which any action is taken against a Board licensee;
           Dr. Messonnier would be afforded full due process if
           the Board were to refer any of the complaints for a
           contested case hearing. ......................................................... 10

    C.    Disclosure of the complaints would result in a chilling
        effect on complainants who allege harm on the part of
        Texas veterinarians. ................................................................12

D.    The Final Judgment regarding the Board rules is in an improper advisory opinion and does not redress any alleged injury...............................................................13

E.    The findings and declarations in the Final Judgment do not limit the disclosure of complaints to third parties..........................14

PRAYER..............................................................................................15

CERTIFICATE OF COMPLIANCE.............................................16

CERTIFICATE OF SERVICE.........................................................17

APPENDIX ........................................................................................18

# INDEX OF AUTHORITIES

**Cases**

*Cleveland Bd. of Educ. v. Loudermill,*
470 U.S. 532 (1985) ...................................................................... 9

*Doe v. Iowa Bd. of Med. Exam'rs,*
733 N.W.2d 705, 709 (Iowa 2007) ...............................................13

*Hannah v. Larche,*
363 U.S. 420 (1960)......................................................................10

*Mathews v. Eldridge,*
424 U.S. 319 (1976) ................................................................. 9, 12

*Osborne v. Tex.,*
No. A–13–CV–528–LY, 2013 WL 5556210 (W.D. Tex. Oct. 8, 2013) ................ 9

*Ramirez v. Tex. State Bd. of Med. Exam'rs,*
927 S.W.2d 770 (Tex. App.—Austin 1996, pet. denied)......................................11

*Scally v. Tex. State Bd. of Med. Exam'rs,*
351 S.W.3d 434 (Tex. App.—Austin 2011, pet denied) ................................. 9, 12

*Tex. Comptroller of Pub. Accts. v. Walker Elec. Co., LLC,*
No. 03–13–00285–CV, 2014 WL 6612431 (Tex. App.—Austin
Nov. 21, 2014, no pet.) (mem. op.)...................................................... 13

*Tex. Logos, L.P. v. Tex. Dep't of Transp.,*
241 S.W.3d 105 (Tex. App.—Austin 2007, no pet.) ...........................................14

*Tirrez v. Comm'n for Lawyer Discipline,*
No. 03–16–00318–CV, 2018 WL 454723 (Tex. App.—Austin
Jan. 12, 2018, pet. denied) (mem. op.)......................................................... 8, 9, 12

**Statutes**

Tex. Gov't Code
§ 552.101 ............................................................................ 8

§ 2001.003(1) ..................................................................................... 11

Tex. Occ. Code
§ 151.003 ............................................................................................. 9
§ 801.207 ............................................................................................. 8
§ 801.207(b) ............................................................... 1, 4, 7, 8, 13, 15
§ 801.207(d) ...................................................................................... 11
§ 801.402 ............................................................................................. 7
§ 801.408 ........................................................................................... 10
§ 801.408(c) ....................................................................................... 10
§ 801.402(d) ....................................................................................... 10

Tex. Civ. Prac. & Rem. Code ch. 37 ....................................................... 5

**Rules**
1 Tex. Admin. Code §§ 1551.1 - .509 ................................................... 12

22 Tex. Admin. Code
§ 573.22 ............................................................................................... 3
§ 573.24 ............................................................................................... 3
§ 573.27 ............................................................................................... 3
§ 573.41 ............................................................................................... 3
§ 573.44 ............................................................................................... 3
§ 573.52 ............................................................................................... 3
§ 573.64 ............................................................................................. 14
§ 573.75 ............................................................................................... 3
§ 575.28 ..................................................................................... 4, 6, 13
§ 575.29 ..................................................................................... 4, 6, 13

Tex. R. Civ. P. 329b(c) ........................................................................... 2

**Other References**
Tex. Att'y Gen.
OR2020-26067 .................................................................................... 8

**REFERENCES TO THE RECORD AND ABBREVIATIONS**

| | |
|---|---|
| CR | Clerk's Record |
| RR, Vol.[#], page [#] | Reporter's Record |
| Board | Appellants, Texas State Board of Veterinary Medical Examiners, and Brittany Sharkey, Solely in Her Official Capacity as Executive Director of the Texas State Board of Veterinary Medical Examiners[1] |
| Dr. Messonnier | Appellee, Shawn Messonnier |
| Tr. [page no.]: lines [# - #] | Transcript of the district court oral argument |
| Final Judgment | District Court Final Judgment signed on July 2, 2024 |
| App. Tab [#] | The appendix attached to this brief. |

---

[1] John M. Helenberg was the Executive Director of the Board when the underlying suit was filed. Brittany Sharkey replaced Mr. Helenberg as Executive Director in September 2022.

# IDENTITY OF PARTIES AND COUNSEL

| *Appellants/Defendants:* | *Counsel before the Trial Court:* |
|---|---|
| Texas State Board of Veterinary Medical Examiners, and John M. Helenberg | Ted A. Ross<br>Assistant Attorney General<br>State Bar No. 24008890<br>Office of the Texas attorney General<br>Administrative Law Division<br>P.O. Box 12548<br>Austin, Texas 78711-2548<br>Telephone: (512) 475-4191<br>Email: ted.ross@oag.texas.gov |
| *Appellee/Plaintiff:* | *Counsel before the Board and before the Trial Court:* |
| Shawn Messonnier, DVM | J. Kirk Bryant (Lead Attorney)<br>Texas Bar No. 03280550<br>kbryant@whitakerchalk.com<br>Donald A. Ferrill<br>Texas State Bar No. 00784047<br>dferril@whitakerchalk.com<br>WHITAKER CHALK SWINDLE & SCHWARTZ PLLC<br>301 Commerce Street, Suite 3500<br>Fort Worth, Texas 76102-4186<br>PHONE: (817) 878-0500<br>FAX: (817) 878-0501 |

## STATEMENT OF THE CASE

As part of an investigation of complaints submitted to the Board, the Board issued to Dr. Messonnier a notice of a scheduled informal conference, which contained allegations in five Board dockets, alleging that Dr. Messonnier committed multiple violations of the Texas Veterinary Practice Act (Act), including failing to meet the professional standard of care in treating animal patients. Before the scheduled date of the Informal Conference, Dr. Messonnier's counsel requested the Board to produce "all complaints against Dr. Messonnier, including all documents and tangible things attached to, enclosed with, or referred to within the complaint, and any reports of investigations." The Board declined to furnish the complaints and other material Dr. Messonnier requested because such material is confidential by law pursuant to Texas Occupations Code section 801.207(b).

Before the informal conference could take place, Dr. Messonnier filed a lawsuit in a Travis County district court, seeking declaratory, mandamus and injunctive relief. The Board did not conduct the informal conference due to the pendency of the suit. After briefing and a merits hearing, the district court signed the Final Judgment on July 2, 2024, which granted Dr. Messonnier's request for declaratory relief but denied Dr. Messonnier's requests for mandamus and injunctive relief.

The Board filed a motion to modify the final judgment on July 26, 2024, which was overruled by operation of law on September 16, 2024. Tex. R. Civ. P. 329b(c). The Board timely filed a notice of appeal on September 20, 2024.

## STATEMENT REGARDING ORAL ARGUMENT

The Board believes that the constitutional due process issue in this case is straightforward and does not require oral argument. However, if the Court disagrees, the Board respectfully requests the opportunity to participate in the argument.

## ISSUE PRESENTED

Was the trial court's grant of declaratory relief proper, given that (1) the complaints against Dr. Messonnier filed with the Board are confidential by law; and (2) Dr. Messonnier would be afforded full due process if any of the complaints were to proceed to a contested case hearing at the State Office of Administrative Hearings?

## STATEMENT OF FACTS

1. Appellee, Shawn Messonnier, D.V.M., of Plano, Texas, holds Texas veterinary license 6277. RR Vol. 3, Defendant's (Board's) Ex. 1.

2. On February 23, 2021, and as part of an investigation of complaints submitted to the Board, the Board issued Informal Conference Allegations in five Board dockets that Dr. Messonnier (i) failed to meet the professional standard of

care in treating animal patients, as required by the Board's Rules of Professional Conduct; (ii) failed to refer any patient to a specialist; (iii) failed to maintain adequate medical records for the treatment of his patient; (iv) failed to document medical need for the prescription drugs Dr. Messonnier administered to patients; (v) failed to note the dates certain drugs were compounded, the name and strength of the medically active ingredients, the identity of the treated animal(s), and the condition of the disease to be treated; and (vi) failed to provide missing medical records and/or updated records to the Board when requested. RR Vol. 3, Defendant's (Board's) Ex. 1 (pdf page 27).

3.      In the same Informal Conference Allegations, and based on the foregoing findings, the Board issued a list of potential violations that the Informal Conference Panel would consider, including whether Dr. Messonnier violated Board Rule 573.22, Professional Standard of Care, Rule 573.24, Responsibility of Veterinarian to Refer a Case, Rule 573.27, Honesty, Integrity, and Fair Dealing, Rule 573.41, Use of Prescription Drugs, Rule 573.44, Compounding Drugs, Rule 573.52, Veterinarian Patient Recordkeeping, and Rule 573.75, Duty to Cooperate with Board, of the Board's Rules of Professional Conduct. RR Vol. 3, Defendant's (Board's) Ex. 1 (pdf page 28).

4.     Dr. Messonnier's counsel thereafter requested the Board to produce "all complaints against Dr. Messonnier, including all documents and tangible things attached to, enclosed with, or referred to within the complaint, and any reports of investigations." RR Vol. 3, Defendant's (Board's) Ex. 2 (pdf page 58).

5.     The Board declined to furnish the complaints and other material Dr. Messonnier requested because such material is confidential by law. Tex. Occ. Code § 801.207(b). RR Vol. 3, Defendant's (Board's) Ex. 2 (pdf pages 59-60).

6.     Before the informal conference was held, Dr. Messonnier filed this lawsuit for declaratory, mandamus and injunctive relief, seeking:

- o a writ of mandamus compelling the Board to produce to Dr. Messonnier complete copies of all complaints received by the Texas State Board of Veterinary Medical Examiners concerning Board Complaint Numbers CP 19-202; CP-20-351; CP 20-352; and CP20-353;

- o a temporary restraining order that prohibits the Board from conducting an informal conference regarding Board Complaint Numbers CP 19-202; CP-20-351; CP 20-352; and CP20-353 until such time as the Board has provided Dr. Messonnier with the records he requested;

- o a temporary injunction that prohibits the Board from conducting an informal conference concerning the complaints until such time as the Board has provided Dr. Messonnier with the records he requested;

- o a declaratory judgment declaring that, as to Dr. Messonnier and license holders similarly situated, (i) Texas Occupations Code § 801.207(b), as amended in 2017, violates Dr. Messonnier's right to due process under the United States and Texas Constitutions and is unenforceable; and (ii) all Board Rules, specifically including 22 TAC 575.28 and 575.29 and all Board practices, formal and informal, which fail to provide

4

Plaintiff and license holders similarly situated, actual notice of the complaints against them, including the specific factual allegations thereof, violate Plaintiff's right to due process under the United States and Texas Constitutions and is unenforceable;

o attorneys' fees pursuant to Chapter 37 of the Texas Civil Practices and Remedies Code.

CR 3-45 (Original Petition).

7. The Board did not hold an informal conference due to the pendency of this suit. (Undisputed).

8. After briefing and argument, the district court issued the Final Judgment granting Dr. Messonnier's request for declaratory relief and denying his requests for mandamus and injunctive relief. CR 157-158. App. Tab A.

9. The Board filed a Motion to Modify Judgment on July 26, 2024, which was denied by operation of law on September 16, 2024. CR 159-223.

10. The Board timely filed its notice of appeal on September 20, 2024. CR 224-229.

## SUMMARY OF THE ARGUMENT

The complaints Dr. Messonnier seeks are strictly confidential by law. There is no legal basis whatsoever for his claims that he is entitled to confidential information, including the complaints.

In addition, the Board has not adjudicated any of the claims set forth in the Informal Conference Allegations, and holding an informal conference would not change that fact. Informal conferences are simply an opportunity for a license holder, such as Dr. Messonnier, to show compliance with allegations contained in a complaint. Dr. Messonnier would not be compelled to accept any proposed order at an informal conference and, in fact, would not even be required to attend the conference. The informal conference would also not result in any action against Dr. Messonnier's license. If the matter were referred to the State Office of Administrative Hearings (SOAH) for a contested case proceeding, Dr. Messonnier would be afforded full due process, including the right to conduct discovery, call his own witnesses, cross-examine the Board's witnesses, brief the issues, and seek judicial review if a Board final order imposes discipline.

Finally, the finding and declaration in the Final Judgment as to Board rules 575.28 and 575.29 would constitute an impermissible advisory opinion because the relief granted goes beyond the plain language of the rules and would not redress any alleged injury suffered by Dr. Messonnier. The Final Judgment purports to invalidate rules that do not concern the confidentiality of complaints. The rules contain no language about the confidentiality of complaints against licensees submitted to the Board.

This Court should reverse the Final Judgment as it pertains to Dr. Messonnier's request for declaratory relief and render judgment in favor of the Board on all claims.

## ARGUMENT AND AUTHORITIES

**I.      Dr. Messonnier is not entitled to declaratory relief.**

**A.      The complaints lodged against Dr. Messonnier are strictly confidential under Texas law, and there are no exceptions.**

Dr. Messonnier is a veterinarian licensed to practice in Texas. That practice, by its very nature, involves the medical treatment of animals, most of which are owned by Texas citizens. The legislature has charged the Board with protecting the public from the unsafe practice of veterinary medicine, including the regulation of practitioners and their licenses. *See* Tex. Occ. Code § 801.402 (grounds for disciplinary actions by the Board, which promote the public interest). For these reasons, the legislature directed and authorized the Board—like most any other professional licensing board—to conduct thorough investigations of complaints without the identity of the complainant or the content of the complaint itself being subject to public disclosure.

In district court Dr. Messonnier admitted that the complaints are confidential by law under the Texas Veterinary Licensing Act (Act). Section 801.207(b) of the Act provides:

7

> Except as provided by Subsection (b-1), ***each complaint***, investigation file and record, and other investigation report and all other investigative information in the possession of or received or gathered by the board or the board's employees or agents relating to a license holder, an application for license, or a criminal investigation or proceeding ***is privileged and confidential and is not subject to discovery, subpoena, or other means of legal compulsion for release to anyone other than the board or the board's employees or agents involved in discipline of a license holder***."

Tex. Occ. Code § 801.207(b) (emphasis added).

The Attorney General, in an open records decision, held that "the board must withhold the submitted information (including the complaint in the Board's investigative file) under section 552.101 of the Government Code in conjunction section 801.207(b) of the Occupations Code." Tex. Atty. Gen. OR2020-26067 (Oct. 16, 2020). *See* App. Tab B. This opinion construed a 2017 amendment to section 801.207, which prohibits release of a complaint to anyone other than the Board or the Board's employees or agents involved in discipline of a license holder.

The complaints that are the subject of this proceeding are strictly confidential, and the Board is prohibited from releasing them to Dr. Messonnier.

## B.    Dr. Messonnier has not been denied due process of law.

To state a claim for deprivation of due process, a party must at least allege (1) the deprivation of a constitutionally protected interest and (2) constitutionally inadequate procedures. *Tirrez v. Comm'n for Lawyer Discipline*, No. 03–16–00318–

8

CV, 2018 WL 454723, at *4 (Tex. App.—Austin Jan. 12, 2018, pet. denied) (mem. op.), citing *Osborne v. Tex.*, No. A–13–CV–528–LY, 2013 WL 5556210, at *4–5 (W.D. Tex. Oct. 8, 2013) and *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 541 (1985). *See also Scally v. Tex. State Bd. of Med. Exam'rs*, 351 S.W.3d 434, 446-447 (Tex. App.—Austin 2011, pet denied), quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). The Third Court of Appeals held in *Scally* that "[t]he legislature has found that '*the practice of medicine is a privilege and not a natural right of individuals and as a matter of public policy it is necessary to protect the public interest through enactment of this subtitle to regulate the granting of that privilege and its subsequent use and control.*'" 351 S.W.3d at 446, n.14 (emphasis added), citing Tex. Occ. Code § 151.003. While there are no parallel legislative findings in the Veterinary Licensing Act, there is no reason why the same principle should not apply to the practice of veterinary medicine.

Dr. Messonnier's due process argument must be evaluated with the foregoing standards in mind.

1. **Informal conferences are not adjudicatory proceedings in which any action is taken against a Board licensee; Dr. Messonnier would be afforded full due process if the Board were to refer any of the complaints for a contested case hearing.**

In district court, Dr. Messonnier argued that he is entitled to the complaints now, notwithstanding that none of the matters have been referred to SOAH, and before any informal conference is held. His argument ignores the fact that an informal conference is not an adjudicatory proceeding or hearing. Instead, it is simply an opportunity for a licensee to show compliance and to engage in settlement discussions. Tex. Occ. Code § 801.408. The informal conference panel does not take enforcement action; it only recommends enforcement action. Tex. Occ. Code § 801.408(c), (d). These types of proceedings are not subject to rights such as apprisal, confrontation, and cross-examination. *See Hannah v. Larche*, 363 U.S. 420, 445-446 (1960). Board investigations like the ones in this case are intended to gather facts related to a complaint against a licensee; they are not for the purpose of adjudicating or determining rights or imposing discipline, which only happen if and after the matter is referred to SOAH for a contested case hearing. Moreover, Dr. Messonnier would not be compelled to accept any proposed order at an informal conference and, in fact, would not even be required to attend the conference in the first place.

In contrast, a contested case hearing, such as one that would be conducted at SOAH if the Board referred a complaint to SOAH, "means a proceeding, including a ratemaking or licensing proceeding, in which the legal rights, duties, or privileges of a party are to be determined by a state agency after an opportunity for adjudicative hearing." Tex. Gov't Code § 2001.003(1). *See also Ramirez v. Tex. State Bd. of Med. Exam'rs*, 927 S.W.2d 770, 772 (Tex. App.—Austin 1996, pet. denied).

Pursuant to the Act, if the Board were to refer any complaints against Dr. Messonnier to SOAH for a contested case hearing, the Board would be obligated to furnish Dr. Messonnier with all information in its possession it intends to offer into evidence in presenting its case in chief:

> (d) Not later than the 30th day after the date of receipt of a written request from a license holder *who is the subject of a formal complaint initiated and filed under this subchapter* or from the license holder's counsel of record, *and subject to any other privilege or restriction set forth by rule, statute, or legal precedent*, and unless good cause is shown for delay, *the board shall provide the license holder with access to all information in its possession that the board intends to offer into evidence in presenting its case in chief at the contested hearing on the complaint.*
>
> The board is not required to provide:
>  (1) a board investigative report or memorandum;
>  (2) the identity of a nontestifying complainant; or
>  (3) attorney-client communications, attorney work product, or other materials covered by a privilege recognized by the Texas Rules of Civil Procedure or the Texas Rules of Evidence.

Tex. Occ. Code § 801.207(d) (emphasis added).

11

And, if the Board refers a case against Dr. Messonnier to SOAH, his right to due process will be satisfied not only through his access to the Board's evidence, but also through his ability to conduct discovery, call witnesses, cross-examine witnesses, etc. 1 Tex. Admin. Code §§ 1551.1 - .509.

It is undisputed that no formal complaint against Dr. Messonnier has been filed at SOAH and, indeed, to date no discipline has been imposed on him. Nor has any contested case hearing (or "trial") occurred. Dr. Messonnier has not and cannot credibly claim that he is being deprived of "constitutionally inadequate procedures." *Tirrez*, 2018 WL 454723, at *4. *See also Scally*, 351 S.W.3d at 446-447, quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

Dr. Messonnier's claim for declaratory relief is improper and should be rejected.

### C. Disclosure of the complaints would result in a chilling effect on complainants who allege harm on the part of Texas veterinarians.

The confidentiality of Board investigations protects complainants who may not wish to testify, and requiring the Board to furnish confidential investigative information would violate the integrity of the investigation and could impair a complainant's willingness to cooperate in the investigation. There are factual situations that may be revealed in the course of an investigation that, if made public, would be not only embarrassing to a licensee, but also detrimental to a licensee's

12

ultimately returning to practice in the profession. Mandating public disclosure of such documents could, in many cases, serve to prejudice the licensee, especially in cases where the allegations made by a complainant are baseless and unfounded. *See Doe v. Iowa Bd. of Med. Exam'rs*, 733 N.W.2d 705, 709 (Iowa 2007). The legislature had this concern squarely in mind when it enacted section 801.207(b).

D.     **The Final Judgment regarding the Board rules is in an improper advisory opinion and does not redress any alleged injury.**

The Final Judgment contains findings and declarations regarding Board Rules 575.28 and 575.29 that are similar to the findings regarding section 801.207(b) of the Act. Rule 575.28 addresses Board investigations. 22 Tex. Admin. Code § 575.28. Rule 575.29 addresses informal conferences. 22 Tex. Admin. Code § 575.29. Neither rule contains any language about the confidentiality of complaints submitted to the Board against licensees. The current language in the finding and declaration, therefore, would constitute an impermissible advisory opinion because the relief granted (invalidating rules that do not concern confidentiality of complaints) goes beyond the plain language of the rules and does not redress any alleged injury suffered by Dr. Messonnier. *See Tex. Comptroller of Pub. Accts. v. Walker Elec. Co., LLC*, No. 03–13–00285–CV, 2014 WL 6612431, at *5 (Tex. App.—Austin Nov. 21, 2014, no pet.) (mem. op.) (Invalidating an agency rule would not redress a plaintiff's complained-of injury; any opinion regarding the validity of the subject rule would

13

amount to an abstract advisory opinion.). *See also Tex. Logos, L.P. v. Tex. Dep't of Transp.*, 241 S.W.3d 105, 123-124 (Tex. App.—Austin 2007, no pet.). It would be no different had the lower court declared unenforceable Board Rule 573.64, regarding continuing education requirements, because, just like the rules the court declared invalid in this case, the continuing education rules do not concern confidentiality.

### E. The findings and declarations in the Final Judgment do not limit the disclosure of complaints to third parties.

During the merits hearing, the trial court judge stated that the Board's concerns about the wide-ranging consequences of disclosing confidential complaints were unfounded because, under the court's ruling, complaints would only be released to the licensee, not anyone else: "I just think you need to give it to the vet who is the subject of the complaint. I don't think -- I don't think declaring this law unconstitutional because it violates the due process clauses requires the vet board to give the complaint to anybody else." Tr. 34:10-15. App. Tab C (transcript of oral argument). However, the current wording of the Final Judgment does not limit the disclosure of a confidential complaint to Dr. Messonnier or other license holders similarly situated.

The Final Judgment is flawed for additional reasons. The findings and declarations in the Final Judgment directly contradict what the Board understands to be the trial court's intent to limit disclosure of complaints to licensees and not to

14

the public at large. To protect against the prohibited release of complaints, the Final Judgment must provide that the Board shall continue to treat such complaints as confidential after it releases the complaints to the subject licensee. The same is true regarding Dr. Messonnier; he should also be prohibited from releasing complaints to outside parties. The confidentiality statute is intended to protect the integrity of the Board's investigations. Allowing a licensee to release complaints to outside parties would completely vitiate the confidentiality provisions in section 801.207(b). These are additional reasons why the Final Judgment should be reversed.

## PRAYER

Appellants respectfully request this Court to reverse that part of the district court Final Judgment that grants Dr. Messonnier's request for declaratory relief and render judgment in favor of Appellants on all claims.

Appellants pray for such other and further relief, both general and special, at law and in equity, to which they may be justly entitled.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

ERNEST C. GARCIA
Chief, Administrative Law Division

*/s/ Ted A. Ross*
Ted A. Ross
State Bar No. 24008890
OFFICE OF THE TEXAS ATTORNEY GENERAL
ADMINISTRATIVE LAW DIVISION
P. O. Box 12548
Austin, Texas 78711-2548
Telephone: (512) 475-4191
Email: ted.ross@oag.texas.gov

***Attorneys for Appellants, the Texas State Board of Veterinary Medical Examiners, and Brittaney Sharkey, solely in Her Official Capacity as Executive Director of the Texas State Board of Veterinary Medical Examiners***

## CERTIFICATE OF COMPLIANCE

I certify that the Appellant's Brief on the Merits submitted complies with Rule 9 of the Texas Rules of Appellate Procedure and the word count of this document is 3,337. The word processing software used to prepare this filing and calculate the word count of the document is Microsoft Word 365.

*/s/ Ted A. Ross*
Ted A. Ross

# CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2024, a true and correct copy of the above and forgoing document was served on the following party via electronic service and/or electronic mail:

J. Kirk Bryant (Lead Attorney)
Texas Bar No. 03280550
kbryant@whitakerchalk.com
Donald A. Ferrill
Texas State Bar No. 00784047
dferril@whitakerchalk.com
WHITAKER CHALK
SWINDLE & SCHWARTZ
PLLC
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102-4186
PHONE: (817) 878-0500
 FAX: (817) 878-0501

*Attorneys for Appellee*

/s/ Ted A. Ross
Ted A. Ross

# APPENDIX

App. Tab A          District court final judgment signed on July 2, 2024

App. Tab B          Tex. Atty. Gen. OR2020-26067 (Oct. 16, 2020)

App. Tab C          Transcript of Oral Argument at Trial Court Merits Hearing

# APPENDIX

# TAB A

NO. D-1-GN-21-001211

| | | |
|---|---|---|
| Shawn Messonnier DVM | § | IN THE 98th |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | |
| | § | DISTRICT COURT |
| Texas State Board of Veterinary | § | |
| Medical Examiners and John M. | § | |
| Helenberg, solely in his Official | § | |
| Capacity as Executive Director of the | § | |
| Texas Board of Veterinary Medical | § | |
| Examiners | § | |
| | § | |
| Defendants. | § | OF TRAVIS COUNTY, TEXAS |

## FINAL JUDGMENT

This matter came before the Court for a merits hearing on this the 2nd day of July, 2024. Plaintiff, Shawn Messonnier, DVM, was present through his counsel of record, Kirk Bryant, Whittaker Chalk Swindle and Schwartz LLC. Defendants, the Texas State Board of Veterinary Medical Examiners, and John M. Helenberg, were present through their counsel of record, Assistant Attorney General Ted A. Ross, Office of the Attorney General. Having considered the parties' pleadings, briefs, and arguments of counsel, the Court finds that:

1. To the extent that Texas Occupations Code § 801.207 (b), (2017)[1] is interpreted to prohibit the release of complaints against Plaintiff and license holders similarly situated, is unconstitutional and unenforceable as to Plaintiff and license holders similarly situated as a violation of Plaintiff's due process rights under the United States and Texas Constitutions.

---

[1] Texas Occupations Code § 801.207 (b), was amended in 2021. The 2017 version controls this case and any complaints submitted between September 1, 2017 and September 1, 2021.

**FINAL JUDGMENT**        Page - 1 -

716995

2. Board Rules, 22 TAC 575.28 and 29 (2018) and all Board practices, formal and informal, which fail to provide Plaintiff and license holders similarly situated with actual notice of the complaints against them, including the specific factual allegations thereof, are a violation of Plaintiff's due process rights under the United States and Texas Constitutions.

**It is therefore ORDERED, ADJUDGED AND DECREED THAT:**

1. Texas Occupations Code § 801.207 (b), (2017) is unenforceable to the extent the same is interpreted to prohibit the release of complaints against Plaintiff and license holders similarly situated who are subject to Board Complaints.

2. Board Rules, 22 TAC 575.28 and 29 (2018) and all Board practices, formal and informal are unenforceable to the extent the same are interpreted to prohibit the release of complaints against Plaintiff and license orders similarly situated who are subject to Board Complaints.

3. All relief requested by any party not specifically granted is hereby DENIED.

Signed this ___2___, day of July, 2024

Maya Guerra Gamble
Presiding Judge

**FINAL JUDGMENT**          Page - 2 -
716995

# APPENDIX
## TAB B



October 16, 2020

Ms. Valerie Mitchell
Legal Secretary
Texas Board of Veterinary Medical Examiners
333 Guadalupe, Suite 3-810
Austin, Texas 78701-3942

OR2020-26067

Dear Ms. Mitchell:

You ask whether certain information is subject to required public disclosure under the Public Information Act (the "Act"), chapter 552 of the Government Code. Your request was assigned ID# 848580.

The Texas Board of Veterinary Medical Examiners (the "board") received a request for information pertaining to the requestor's client. The board claims the submitted information is excepted from disclosure under section 552.101 of the Government Code. We have considered the claimed exception and reviewed the submitted information.

Section 552.101 of the Government Code excepts from disclosure "information considered to be confidential by law, either constitutional, statutory, or by judicial decision." *See* Gov't Code § 552.101. Section 552.101 encompasses information made confidential by the current section 801.207 of the Occupations Code, which provides:

> (b) Each complaint, investigation file and record, and other investigation report and all other investigative information in the possession of or received or gathered by the board or the board's employees or agents relating to a license holder, an application for license, or a criminal investigation or proceeding is privileged and confidential and is not subject to discovery, subpoena, or other means of legal compulsion for release to anyone other than the board or the board's employees or agents involved in discipline of a license holder.

Occ. Code § 801.207(b). The board states under its procedures, an investigation file is opened upon receipt of a complaint and any matters related to that complaint and

**APPENDIX TAB B**

subsequent investigation become part of the investigation record. The board informs us the submitted information relates to a complaint filed with the board after September 1, 2017, and is contained within the investigation file. The board also states section 801.207(d) does not apply. Based on these representations, we agree the board must withhold the submitted information under section 552.101 of the Government Code in conjunction section 801.207(b) of the Occupations Code.

This letter ruling is limited to the particular information at issue in this request and limited to the facts as presented to us; therefore, this ruling must not be relied upon as a previous determination regarding any other information or any other circumstances.

This ruling triggers important deadlines regarding the rights and responsibilities of the governmental body and of the requestor. For more information concerning those rights and responsibilities, please visit our website at https://www.texasattorneygeneral.gov/open-government/members-public/what-expect-after-ruling-issued or call the OAG's Open Government Hotline, toll free, at (877) 673-6839. Questions concerning the allowable charges for providing public information under the Public Information Act may be directed to the Cost Rules Administrator of the OAG, toll free, at (888) 672-6787.

Sincerely,

James L. Coggeshall
Assistant Attorney General
Open Records Division

JLC/jm

Ref:    ID# 848580

Enc.    Submitted documents

c:      Requestor
        (w/o enclosures)

**APPENDIX TAB B**

# APPENDIX

# TAB C

REPORTER'S RECORD
VOLUME 1 OF 1 VOLUME
TRIAL COURT CAUSE NO. D-1-GN-21-001211


SHAWN MESSONNIER DVM,          )  IN THE DISTRICT COURT
                               )
     Plaintiff                 )
                               )
VS.                            )
                               )
TEXAS STATE BOARD OF           )
VETERINARY MEDICAL             )
EXAMINERS AND JOHN M.          )  TRAVIS COUNTY, TEXAS
HELENBERG, SOLELY IN HIS       )
OFFICIAL CAPACITY AS           )
EXECUTIVE DIRECTOR OF THE      )
TEXAS BOARD OF VETERINARY      )
MEDICAL EXAMINERS,             )
                               )
     Defendants                )  98TH JUDICIAL DISTRICT


------------------------------------------------

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

------------------------------------------------


On the 2nd day of July, 2024, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Maya Guerra Gamble, Judge presiding, held in Austin, Travis County, Texas;

Proceedings reported by machine shorthand.

**APPENDIX TAB C**

**A P P E A R A N C E S**

ON BEHALF OF PLAINTIFF

    J. KIRK BRYANT
    State Bar No. 03280550
    WHITAKER, CHALK, SWINDLE & SCHWARTZ
    301 Commerce Street, Suite 3500
    Fort Worth, Texas  76102-4186
    (817) 878-0500

ON BEHALF OF DEFENDANT

    TED A. ROSS
    State Bar No. 24008890
    Assistant Attorney General
    Administrative Law Division
    OFFICE OF THE ATTORNEY GENERAL OF TEXAS
    P.O. Box 12548
    Austin, Texas 787011-2548
    (512) 475-4191

    KELLY L. PHELPS
    State Bar No.  24121055
    KRISTIN NICOLE STAVROU
    State Bar No. 24134511
    TEXAS BOARD OF VETERINARY MEDICAL EXAMINERS
    1801 Congress Ave,  Suite 8-800
    Austin, Texas  78701
    (512) 305-7555

**APPENDIX TAB C**

<b>I N D E X</b><br/>
<b>VOLUME 1</b><br/>
<b>JULY 2, 2024</b>

|  | Page | Vol |
|---|---|---|
| Announcements.......................... | 5 | 1 |
| Argument by MR. BRYANT................. | 10 | 1 |
| Argument by MR. ROSS.................. | 20 | 1 |
| Ruling................................ | 35 | 1 |
| Adjournment........................... | 47 | 1 |
| Reporter's Certificate................ | 48 | 1 |

**EXHIBIT INDEX**
**VOLUME 1**

**PLAINTIFF'S**

| NO.        DESCRIPTION | OFFERED | ADMITTED | VOL |
|---|---|---|---|
| 1-Correspondence | 8 | 8 | 1 |
| 2-Correspondence | 8 | 8 | 1 |
| 3-Email | 8 | 8 | 1 |
| 4-Correspondence | 8 | 8 | 1 |
| 5-Correspondence | 8 | 8 | 1 |

**DEFENDANT'S**

| NO.        DESCRIPTION | OFFERED | ADMITTED | VOL |
|---|---|---|---|
| 1-Allegations | 8 | 8 | 1 |
| 2-Original Petition | 8 | 8 | 1 |
| 3-Correspondence | 8 | 8 | 1 |

**APPENDIX TAB C**

**PROCEEDINGS**

*(The following proceedings were held in open court)*

THE COURT:  This is cause number D-1-GN-21-001211, Messonnier --

MR. BRYANT:  Your Honor, I have been pronouncing it Messonnier.  My partner would know better but he ain't here.

THE COURT:  Okay, Messonnier versus Attorney General, Helenberg, State Board of Veterinary Medical Examiners.

Can I have announcements, please.

MR. BRYANT:  Your Honor, I'm Joe Kent Bryant with Whitaker Chalk out of Fort Worth for Dr. Messonnier.

THE COURT:  Thank you.

MR. ROSS:  Good morning, Your Honor, Ted Ross, Attorney General's Office.  And I'm here with Miss Kelly Phelps, who is the General Counsel of the vet board, and then behind me is Miss Kristin Stavrou, who is a vet board staff attorney.  And we're here on behalf of Defendants.

THE COURT:  Okay.  And in the back, because it's a small -- or you're just observing?

SPECTATOR:  I'm just observing.

THE COURT:  Okay.  All right.  And then --

all right. Are you, Mr. Ross, are you and Miss Phelps intending to split your arguments? Or is just one of you intending to handle it.

MR. ROSS: Personally -- oh, no, among ourselves it will just be me.

THE COURT: All right. That sounds fine.

All right. So, typically in one of these we admit a record. There isn't really a record in this case.

MR. BRYANT: Correct.

THE COURT: So, do we need to admit anything?

MR. BRYANT: Your Honor, both the Board and the Plaintiff have both submitted exhibits. The Plaintiff's Exhibits 1 through 5 through Box. I have a copy and a binder for the Court, if you would like it.

THE COURT: Okay, I think you -- well, I have -- is it -- are they included in what you sent in before? I think so. But you can give me another one, I'm happy to take it.

MR. BRYANT: Well, I sent you the hard copy, a copy of our briefing.

THE COURT: Yes.

MR. BRYANT: These are our trial exhibits.

THE COURT: Okay. So that's --

MR. BRYANT:  I will tell you, they are the same exhibits that are in the appendix, they're just numbered for trial purposes 1 through 5 instead of A through E.

THE COURT:  That sounds wonderful.

They're not in Box, at least I haven't found them yet.  Let me just say that.  I have found three Defendant's exhibits in Box and a proposed final judgment submitted by somebody, I don't know who because I would have to open it.

MR. ROSS:  That was me, Your Honor.

THE COURT:  Okay, Defendant's proposed order.  And that's all that's in Box.  But if you brought it on paper, that's okay.

MR. BRYANT:  I apologize.

THE COURT:  I just need one or the other.

MR. BRYANT:  I apologize, Your Honor, I saw it in Box the other day.

May I approach?

THE COURT:  Yes.  Thank you.

That's okay.  Sometimes -- I don't know.  It's fine.

MR. ROSS:  I apologize, Your Honor, I don't have a notebook with our exhibits.

THE COURT:  That's fine.

MR. ROSS:  I thought if they were in Box --

THE COURT:  It's totally fine.  Either/or is fine with me for these purposes.

But I do take it to -- am I correct in understanding that you don't object to each other's exhibits?

MR. BRYANT:  I do not object to the Defendant's exhibits.  It's my understanding he does not object to the Plaintiff's exhibits.

MR. ROSS:  That's correct, Your Honor.

THE COURT:  Okay.  So, Plaintiff's 1 through 5 and Defendant's 1 through 3?

MR. ROSS:  Yes, ma'am.

MR. BRYANT:  Yes, ma'am.

THE COURT:  Are admitted.

*(Plaintiff's Exhibits 1 - 5 and Defendants Exhibits 1 - 3 admitted.)*

Sorry, let me just write this down.  I keep a little, just for my own sake, it's a little easier to know in the future what happened if I write it down.

MR. BRYANT:  Certainly.

THE COURT:  Okay.  And then it seems like we may want a record of the full proceeding, but if I'm

wrong tell me.

MR. ROSS: Your Honor, I think -- I'm sorry, I don't want to make the court reporter work any harder than she already is, but because we have exhibits and we're referring to them and everything, I think we prefer --

THE COURT: Yeah, and it's different than a normal administrative appeal which comes after an actual hearing with a record which is limiting. I feel like I'm not really limited to anything for this appeal. Okay, then we will stay on the record. Wonderful.

All right, here is what I've reviewed already. And I did get ready and have reviewed things, so hopefully that will help me understand everyone's arguments.

And do we think we'll need all three hours?

MR. BRYANT: I would be stunned were we to need all three hours.

THE COURT: Okay. Me, too. Good. I was like I'm here for you, but oh, my gosh, what are we going to be talking about for three hours.

MR. ROSS: Your Honor, I would be surprised if we go one hour, but I never know.

MR. BRYANT: I would -- we had a one-hour

option at one point but I was just a little nervous about taking away our option.

THE COURT: Yeah, it's smart because if you had there would be a bunch more people waiting for their time and instead of giving me three hours they would have sent four hours and all the pressure.

So, I'm ready if you guys are.

MR. ROSS: Yes, ma'am. Yes, Your Honor.

MR. BRYANT: If it please the Court.

THE COURT: Yes.

MR. BRYANT: I am Kurt Bryant with Whitaker Chalk law firm in Fort Worth. As the Court noted, we do not believe this will take long. It's, frankly, a very substantive but very simple matter before the court. It's also a matter limited scope in that the statute that is -- what we are attempting to do is set aside as unconstitutional a provision of the Occupations Code. The provision we're attempting to set aside is unconstitutional and, of course, the rights that follow it has been changed.

THE COURT: Oh, it has.

MR. BRYANT: It was changed in 2021. And there's not been an attack in this lawsuit on the 2021 version because we didn't have a claim, to my knowledge, that would be tied to the 2021 version.

THE COURT: And this version went into effect in 2018?

MR. BRYANT: This version went into effect in 2017.

THE COURT: 2017.

MR. BRYANT: Directly into effect in 2018.

THE COURT: Okay. So, it was like a September 1st law?

MR. BRYANT: September 1, 2017, September 1, 2021.

THE COURT: Okay.

MR. BRYANT: The actions that are involved in this case emanate from the 2009 -- 2019/2020 period.

THE COURT: Okay.

MR. BRYANT: So, they are covered by the 2018 version of the statute. I suspect, but I'm not going to speculate, but I suspect there's not a whole lot of 2021 and before cases still out there. So, the scope of what we're asking is going to be narrow as far as its actual practical effect. But as to Dr. Messonnier and anybody else who had a claim pending subject of the 2018 statute, it is essential. Because the focus here is fundamental constitutional right.

Prior to 2018, the Board had routinely provided the complaints of Veterinarian practice claims

to the veterinarians in order to prepare for preliminary conferences, informal conferences. And, in fact, Plaintiff's Exhibit Number 5 is a 2018 Attorney General opinion by -- 2009, I'm sorry, Attorney General opinion by Governor Abbott when he was the Attorney General, whereby the Board acknowledged, as did the A.G.'s office, the constitutional implications of not providing adequate due process to the Board.

And that can be found -- I believe it to be in Plaintiff's Exhibit Number 5. I'm sorry I don't have the specific pin cite, but it's towards the end, when both the Board and Attorney General Abbott acknowledged the constitutional implications.

In this case, after 2018, the Occupations Code was amended to prohibit a public information request for the complaints and to specifically prohibit the disclosure to anybody of those complaints. And in that circumstance when you had a complaint to a veterinarian, you get a letter, which you can see in Plaintiff's Exhibit Number 1, which says, in essence, we have and believe -- Plaintiff's Exhibit number 1 says, we have six animals that have contentions of potential issues, please provide us a narrative form of the facts and circumstances on those six animals. And that's basically all it says.

Dr. Messonnier attempted to comply. They -- he met with the Board, met with the investigators at some point. Nothing happened. And then continued, you know, continued to work with them. And then in 2020, Dr. Don Ferrill, who is a lawyer with my office, requested copies of the complaints, at which point -- and that's Plaintiff's Exhibit Number 3, at which point the Board requested an A.G. opinion from General Paxton, which denied the complaints.

And then in February of 2021, which is Plaintiff's Exhibit Number 2, the Board sends to Dr. Messonnier, care of Dr. Ferrill, a Veterinarian Medical Examiner's Board letter noticing up a preliminary -- or an informal conference on a -- on not only the complaints that were the subject to the 2019 letter, but three new complaint numbers that we never heard of, all of which apparently stem from whatever the investigators found when they went to Dr. Messonnier's clinic.

They did include basic allegations but no factual underpinnings of those allegations, and I believe those allegations are a part of Plaintiff's Exhibit Number 2 and are also Defendant's Exhibit number 3 -- number 1.

THE COURT: How, based on Plaintiff's

Exhibit 1 and Plaintiff's Exhibit 2, how was Dr. Messonnier supposed to know which of those complaint numbers covered the information in Exhibit 1? I don't see a complaint number in Exhibit 1 anywhere. The letter from the Board.

Oh, there it is at the very top. Case number.

MR. BRYANT: It's on case number.

THE COURT: Okay. And so they're saying all of these complaints are in that one case number. And then two years later they have added three more, but he didn't get similar letters for those three.

MR. BRYANT: No, ma'am.

THE COURT: Okay.

MR. BRYANT: And what is important, a part of what is important in Plaintiff's Exhibit Number 2 is the last paragraph of Plaintiff's -- well, first off, in the first paragraph Dr. Messonnier is invited to this conference where he will be given ten minutes by Zoom to say his case. And then in the last paragraph the Enforcement Committee will deliberate and may dismiss the complaint, may refer the complaint for further or fine; and if a violation is found the Enforcement Committee will inform you of their decision and may propose a settlement.

In our judgment, Your Honor, that's pretty stinking critical. And at that point Dr. Messonnier has still not been provided with the actual factual underpinnings of the allegations against him. And, in fact, to this day has not been provided the actual factual underpinnings of the complaints against him.

Certainly we recognize what the statute says. We have to, because otherwise I would be pretty disingenuous. But we also recognize that Dr. Messonnier has been practicing veterinarian medicine for thirty-plus years, even though in the State's briefing they argue it's a privilege, not a right, because it's a regulated entity, I mean, the caselaw is clear that, yes, and yes. It's both.

You go back to the State Board of Accountancy case, which we have in our brief, which is 4 S.W.3d 429, and the cases following out of that. It is a property right. And under the constitution, Dr. Messonnier cannot be -- his property rights can not be impaired without due process.

The State has taken the position in their briefing that this is not an adjudicatory proceeding. With all due respect, I disagree. When the actual notice letter setting up this proceeding says the panel will deliberate and may find, that is adjudicatory.

Is there other layers on top of that? Certainly. Can they go to SOAH if necessary? Certainly. But you've got ten minutes to present to the Board or to the Board's investigative committee why they shouldn't do anything based on facts you don't know. And if you don't like what they say, then you're stuck with either going to SOAH or accepting a penalty that you don't necessarily know is right.

That's violative of the constitution, Texas and federal. And I believe we've adequately addressed that in our briefing, Your Honor, I don't want to just sit here and reread the briefs.

The other issue that comes through is in the administrative regulations there is a requirement that the Board provide Dr. Messonnier within 30 days of request any documents it intends to provide in a contested case under this subchapter. Contested case under this subchapter. Contested case is nowhere mentioned in the subchapter. Or formal complaint.

THE COURT: Right.

MR. BRYANT: Is nowhere else mentioned in that subchapter. So, the only complaint mentioned is the actual complaint. The Board has not provided even the fundamental information required by the administrative regs at that time to provide all the

information they might produce at any contested case on these complaints.

So, Your Honor, quite simply, we are asking that 801.207(b) of the Texas Occupations Code as amended in 2017 and as was in effect from 2017 through 2021 -- we are not addressing the '21 amendment, just the 2017 version -- and Texas Administrative Code 22 TAC 575.28 and 29, which were in effect from 2018 through 2022, I believe, are unconstitutional because they deprive Dr. Messonnier and others similarly situated, veterinarians who have property right in their license to fundamental due process prior to any informal conference.

And we're asking the Court to enjoin the application of those statutes and rules to those parties; and we're asking the Court to order the State through mandamus to produce that information and to prohibit the Board from going forward with any complaints -- any matters in these four complaints until they have done so, Your Honor. In a nutshell, that's what this case is about, so.

THE COURT: So, are these -- have these been hanging over his head since this letter in 2019?

MR. BRYANT: Yes, ma'am.

THE COURT: All these complaints.

MR. BRYANT: Yes, ma'am.

THE COURT: Including the three he's never seen anything about.

MR. BRYANT: Correct.

Now, in all fairness, everybody got COVID.

THE COURT: Yes, that's true.

MR. BRYANT: And when we filed the temporary -- we filed this case procedurally with an application for a temporary restraining order. And as soon as the State got informal notice of that we reached a standstill agreement with the State that we would pull down the TRO, we would pull down the request for temporary injunction, and the State would not take any further action pending a resolution of this case.

THE COURT: And then we had the pandemic.

MR. BRYANT: And -- I mean, this was actually going on mid pandemic.

THE COURT: Oh, it was.

MR. BRYANT: But we were still working through what in the world do we do post pandemic.

THE COURT: Uh-huh, uh-huh.

MR. BRYANT: And there had been some slight delays after that because of various issues. We were set in March, you had trial setting issues.

THE COURT: Yes, I apologize.

**APPENDIX TAB C**

MR. BRYANT: No, that's no problem.

THE COURT: Also, I think you guys didn't send me any materials for your first setting.

MR. BRYANT: Correct.

THE COURT: So that wasn't my fault.

MR. BRYANT: That was not your fault, that was my fault.

THE COURT: The second one might have been my fault.

MR. BRYANT: I started in 1984 and I'm learning electronic law, but I'm not necessarily fully advanced.

THE COURT: Yeah, yeah.

MR. BRYANT: But those case have still been hanging out there since this case has been filed, nothing has happened on them, and --

THE COURT: But they're not gone.

MR. BRYANT: They -- we've not been informed that they're gone. And when Dr. Ferrill has inquired of the Board it's my understanding they're still reflected as open, but nothing has happened on them.

THE COURT: Okay. I thought Ferrill was his lawyer, another lawyer.

MR. BRYANT: He is a lawyer and a

**APPENDIX TAB C**

veterinarian.

THE COURT: Oh, he's both. Okay. Wow, that's a -- that's a combo you don't hear about too often.

MR. BRYANT: Yeah, he's an interesting guy. He's been with us for five, six years, seven years, I guess. And he's a great guy, but he does a lot of veterinary work.

THE COURT: I would imagine.

All right. Thank you so much.

MR. BRYANT: Thank you.

MR. ROSS: Thank you, Your Honor. I'm an attorney, I'm not a vet, but I have two pets that I care about a lot. I'm sure you do, too.

Your Honor, there's no constitutional right not to be investigated. This is what this is. It's an investigation. And the statute is clear, 801.207(b), that each complaint, investigation file and record, I know you know this, and other investigative report, et cetera, is privileged and confidential, not subject to discovery, subpoena, or other means of legal compulsion.

And it's clear that the statute refers to an investigation and there is not any enforcement action. There may or may not be enforcement action.

**APPENDIX TAB C**

But when the Board gets a complaint, they can't -- I mean, they have to investigate it. And I am unaware, I mean these ISC statutes are in several other Texas practice acts, the Medical Practice Act, I believe the Pharmacy and Nursing Practice Acts, and there's a reason for that. There's a reason for confidentiality of investigations.

I think it's, you know, I think it's kind of common knowledge, you're being criminally investigated, a potential criminal defendant can't go to the FBI or the local D. A. and say, give me everything you're investigating me about. But there is a reason for it. And the identity of the complainant, which I think is what this is all about, is very, very important to keep confidential. A complainant may or may not wish to testify, and requiring the Board to provide investigative information would violate the integrity of the investigation and can even violate a complainant's willingness to cooperate.

And it's also, Your Honor, the confidentiality provision is also intended to protect the licensee. For instance, this is not the case here, but there are licensed professionals who can be subject to substance abuse or other impairment issues and it could be embarrassing to a licensee. And keep in mind,

**APPENDIX TAB C**

as you know, Your Honor, they're asking for this statute to be -- to be held unconstitutional, not just as to Dr. Ferrill. And the sweeping effect --

THE COURT: Dr. Messonnier.

MR. ROSS: I mean, I'm sorry, Dr. Messonnier.

THE COURT: He's not here, so we can say it however we need to.

MR. ROSS: It could prejudice a licensee, and that's especially if there are baseless allegations in a complaint. And as we brief, once there is an adjudicatory process in an action against a professional licensee's license -- and yes, the professional licensee is entitled to due process, that happens if and when there's an enforcement action at SOAH.

They refer the case to SOAH and it's just -- just like in District Court, you get discovery, you have notice, you have hearings, you can confront witnesses, brief the issues, fully argue. That's -- that's where the due process is. But that doesn't happen unless and until the Board can determine whether a complaint has merit.

So yes, it's true that we say professional license is a privilege, not a right, it's subject to investigation. We don't dispute that if there is an

adversarial hearing that there is entitlement to due process.

Your Honor, with respect to the 2021 amendment that Mr. Bryant referred to, my understanding of that amendment is that the new thing, and I'm addressing this to kind of underscore the fact of what the effect of holding these statutes and rules unconstitutional would be, in the 2021 amendment there's a new provision that says 14 days prior to the ISC a medical review -- a medical review of cases requiring medical expertise have to be provided to the veterinarian.

That wasn't in the 2017 provision. But everything else was. So, I would respectfully disagree that a ruling in this case would be narrow and only apply in this case and only apply to Dr. Messonnier.

With respect to the notice, the ISC notices, Your Honor, in, let's see, it is Plaintiff's Trial Exhibit Number 2 that Mr. Bryant referred to as the February 23, '21, letter from Miss Valerie Mitchell to the doctor. And you see in the re line there, that's all the complaints that are a subject of the allegations in this case.

And, as with the earlier letter, there are informal conference allegations there, and that's

attached to that letter. There are six investigative findings that put Dr. Messonnier on notice of what this is about, and then the next page is the potential violations.

Now, with respect to an ISC, there is no decision made with respect to discipline of a licensee or action against a license. The Board -- I'm sorry, the ISC panel can recommend filing a case at SOAH. They can recommend dismissal of the complaint. But that is not an adjudicatory process. The thing is, the purpose of an ISC is to give the licensee an opportunity to show compliance. And they have that full opportunity. The licensee doesn't even have to go to an ISC if he or she doesn't want to, it's to give the licensee the ability and the opportunity to respond to the allegations.

And I think that Dr. Messonnier, what this kind of whole case is about is confusing an investigation with an enforcement proceeding. And the statutes, we believe, and the rules are clear that an ISC, and I'm unaware of any other case under any other practice act that holds that an ISC is an adjudicatory proceeding, and that is there for the licensee.

And let's see here, I think I'm about done.

On the mandamus claim, Your Honor, and

there are very few cases but there's a 1950 Amarillo Court of Appeals case that says that, you know, mandamus can't be used to compel an illegal act. Now, I understand that Dr. Messonnier is asking the Court to hold the statutes unconstitutional, but mandamus in and of itself would not be proper unless and until that happened.

And we strongly, strongly believe that's not the case, and we are -- the Board is very concerned about what the sweeping effect of a court's holding these statutes to be unconstitutional would be and how it would affect complainants and licensees. And that -- I think that should be a very important consideration for Your Honor.

Your Honor, I spent quite a bit of time preparing for this and I think I'm done already, so.

THE COURT: Well, I'm curious how you think, and I don't mean you personally, obviously, for example, Dr. Messonnier could have ever shown up for that meeting, whatever you want to call it, and defended himself against CP20-350, CP20-351 or CP20-352.

MR. ROSS: Well, he had notice of the allegations.

THE COURT: He did not.

MR. ROSS: Your Honor, the letters that I

have in my exhibits, that's included, the --

THE COURT: Did you point them out to me?

MR. ROSS: I did, Your Honor, I'm happy to again.

THE COURT: I see the investigative findings, which all relate --

MR. ROSS: That's what I'm referring to.

THE COURT: -- all relate to CP19-202.

MR. ROSS: And, Your Honor, the Plaintiff's Exhibit 7 --

THE COURT: I don't have a Plaintiff's Exhibit 7.

MR. ROSS: I'm sorry, that's my tab number. Plaintiff's Exhibit 2.

THE COURT: That's what I'm looking at.

MR. ROSS: Okay. And it has the complaint numbers, the one, two, three, four complaint numbers in the re line there.

THE COURT: Right. But the problem is why -- the first letter that was sent to him has the CP19.

MR. ROSS: Uh-huh.

THE COURT: And it talks about six animals, I guess, right?

MR. ROSS: April 13th -- April 3, 2019?

THE COURT: Uh-huh.

So, there are some animals in this 2019 letter that are not in your Exhibit 1, and there are other animals in your Exhibit 1 for which he never got a letter.

It doesn't really matter. I mean, I -- I just disagree entirely that this is not -- I mean, this is not only an investigation. If it were, there would be no problem. I agree, the Board can receive a complaint and investigate and dismiss without ever showing the vet the complaint. That seems totally reasonable to me. Although, if I were the vet I would want it, even when it were dismissed. And as you know, or maybe you don't, maybe you've never had anyone file a grievance, which would be great, but most of us who have practiced for a long time get them because people get mad.

MR. ROSS: Uh-huh, I have.

THE COURT: And then you get a letter and it basically says, so and so said this and we've dismissed it, it doesn't rise to the level of anything, right? That would be fine, I think. That would be no problem. That would not implicate due process at all.

But this is completely different, because he's being asked to show up and defend himself and he

has no idea what the complaint really says. And I just don't think that's fair. I don't think that's what our constitution envisions, and I don't think that's what any -- I mean, not that this really matters for the decision, but I just don't think that's what anyone in Texas would say: Oh, yeah, that seems fair, I'm going to file a complaint and he has to defend himself without even knowing what it is. I mean, nobody would want to be in that position themselves.

So, I think the minute the Board says, show up and defend yourself and/or agree to a settlement, it's changed what that proceeding is into something else, and then I think due process is implicated and the vet deserves a copy of the complaint.

MR. ROSS: Your Honor, I guess my response to that would be again to reemphasize what I said earlier, that an ISC is for the licensee, it's an opportunity, it's a settlement conference, and they don't -- I mean, he doesn't have to even come to the ISC, you know, that's not even required. And it's part of an investigative process. And there's no case or statute that I'm aware of that says that an investigatee, a professional licensee who is being investigated, has a full right to an adjudicative hearing and due process and provision of the complaint,

even though it's confidential, at a conference where you talk about, hey, here is what -- here are the allegations.

And a lot of the allegations, you know, he would be familiar with: Failure to keep proper records, failure to -- with respect to violations respecting medication and things like that. He knows, oh, there's that dog, I treated that dog. It's just not a proceeding that is subject to -- it's not a contested case proceeding. And the licensee walks out of that, his or her license is -- unless it's an emergency, his or her license is still fully intact and no action can be taken against it without full due process and a contested case hearing.

THE COURT: Well, that can't be true, because the letter suggests a settlement.

MR. ROSS: Well, the settlement is offered. You don't have to accept the settlement.

THE COURT: Right, but that -- that is the kind of process and pressure that violates the due process clauses. Because -- because it attempts to influence the -- in this case the licensee to agreeing to something without all of the information. Because it's reasonably a risk and probably terrifying to say "no" to something like that when you don't know exactly

what you're facing.

MR. ROSS: Your Honor, I'm not suggesting that a licensee -- it's a pleasant experience, you know, to get notice of a complaint and the opportunity to come to an ISC. But again, I just have to state that a settlement is offered and, you know, he has an opportunity, the licensee, he or she has the opportunity to respond to that. I don't agree with that. And it is not uncommon in my experience for ISC -- well, strike that, I'm unaware of any ISC that has been used to tarnish or to take action against a licensee without first going through due process at SOAH.

And again, I've said it before, I know Your Honor knows our position, there's just no due process rights in an investigation. It's a settlement, he doesn't have to accept it, they can negotiate and say, I'll do this, I'll do this. We're going to recommend revocation, he can say, well, what about public reprimand. You know, that's that process before the licensee even has to be subject to disciplinary action and an enforcement proceeding.

THE COURT: And I think all of that would be great if the licensee could see what the complaint was.

I also can imagine the way the letter was

written, for example, where it just gives the licensee the date the care for that animal began. I could imagine a situation where the vet had cared for an animal for many years and then they get a complaint that says, you didn't properly record your medications. And are they supposed to bring in ten minutes ten years of records?

It's -- I think I agree with you up through the investigation, but the minute the investigation turns to a communication to the licensee that something other than, we received a complaint and we find it -- we find that we can dismiss it or we're not going to take further action, I think it changes. I think it changes the nature of that proceeding. So.

MR. ROSS: Okay, Your Honor, I appreciate that. I --

THE COURT: Yeah.

MR. ROSS: -- made my argument. I think one thing, though, I would want to point out is that, you know, I think Your Honor could, you know, whatever the Court's inclined to do, could say more information about the investigation without holding 207 completely unconstitutional. You know. Because it's like give -- give the complaint when 207(b) says --

THE COURT: Don't --

MR. ROSS: -- not subject to disclosing a complaint, and that -- that will have a sweeping effect on other practices.

THE COURT: Well, I don't know, for example, I've had some rules cases before that were more -- that were like a different kind of attack on the rulemaking. Doesn't feel like that's the situation in this case, it's different, what I'm being asked to do. So I don't know that I can just, for example, tell the Board that -- I don't think I can say, you guys need to change your rules to make it so that once the investigation is over and you think there's something potentially actionable that you have to share the complaint. I don't think I can do that. But if you think I can, I'm open to hearing about it.

MR. ROSS: Well, I guess my argument is just that we believe 207(b) is plain on its face. Each complaint, you know, cannot be furnished, is not -- is confidential not subject to judicial compulsion. So, if the court were to mandamus the Board to provide the complaints in this proceeding, we believe it would go against the plain language of 207.

Now, Dr. Messonnier has asked for that statute to be held unconstitutional.

THE COURT: Right.

MR. ROSS: And that I think is the problem and the broad implications. There might be, in a vet board case or a medical board case, there might be a situation where the complaint, like I mentioned, it might have embarrassing allegations, it might -- it might have, you know, if disclosed could subject the licensee to harassment and embarrassment and things of that nature regarding substance abuse and things like that. And it would just have a sweeping effect that I don't think was -- that I think would go against the plain language of the statute.

THE COURT: Well, it definitely would, but I don't think I'm allowed to rewrite the statute. I think I have to make a decision up or down on the statute.

MR. BRYANT: Your Honor, may I have one clarification? Because, with all due respect to Mr. Ross, he says that the Plaintiff is making this a facial attack on the statute as a whole. And throughout our Plaintiff's original petition it's as to Plaintiff and license holders similarly situated. That's on page 3, paragraph D. And this is real consistent with the 2009 opinion by Governor Abbott, that the Board can give the stuff to the license holder. We are not, per se, saying, you know, gosh, Kirk wants to know what's

going on with the vet next door, he doesn't have a pot to pee in, but --

THE COURT: Right, no, I was going to ask about that, Mr. Ross. I don't -- the disaster you are trying to convince me of seems unlikely. I don't know why the vet board would decide, well, we're never going to release the complaint to all because of the law. Now the law has been held unconstitutional, so we're going to publish the complaints on a web page or something.

I just think you need to give it to the vet who is the subject of the complaint. I don't think -- I don't think declaring this law unconstitutional because it violates the due process clauses requires the vet board to give the complaint to anybody else.

MR. ROSS: We're not saying that, Your Honor.

THE COURT: Okay. That's what I thought.

MR. BRYANT: That's what I heard.

MR. ROSS: I'm talking about in this case. But I would take Your Honor back to the petition on page 3, paragraph E, you know, I understood Mr. Bryant to focus in on this, it's not just Dr. Messonnier, other license holders similarly situated.

THE COURT: That's right.

MR. ROSS: That's very broad. That's not just Dr. --

THE COURT: It is broad. I think it's every vet who has a complaint that the Board just does not dismiss.

MR. ROSS: Exactly.

THE COURT: I agree with that. But if they all brought their case and it was exactly the same as this one, I think I would feel the same about the law. So.

I think at the end of the day I agree with the Plaintiff that the law, as written, violates the due process rights of the Plaintiff and other vets who have complaints that the Board believes have some merit. And so I believe those individuals deserve their due process rights, which include knowing what the complaint against them is. I don't -- I don't think our constitution says, come and defend yourself, we aren't going to tell you against what. That -- that feels like a Russian novel from the past. I mean, it just doesn't -- it doesn't fit our system.

So I am going to grant the Plaintiff's request.

I don't have a proposed order from you, Mr. Bryant. Do you have one on paper?

MR. ROSS: Your Honor, may I have a clarification on what request? Is it the --

THE COURT: I want to look at how he wrote his proposed order.

MR. BRYANT: And I will tell you, Your Honor, I did not give it to counsel until this morning, so he didn't have an opportunity --

THE COURT: Okay, let me look at it, we can look at it at the same time.

MR. BRYANT: Very good.

THE COURT: I actually think I probably can both declare the statute unconstitutional and a mandamus. I don't know if you're here to tell me the Board would require that or if, based on the ruling, the Board would change its behavior in this case without it. I don't know.

MR. ROSS: Your Honor, I think there's -- and I'm sorry, I don't have it, there's caselaw like on rulings by court, the agency is presumed to comply, and then if they don't --

THE COURT: That's why I'm asking.

MR. ROSS: Yeah.

THE COURT: Yeah. So, you'll have appellate rights, obviously.

MR. ROSS: Absolutely, and I --

**APPENDIX TAB C**

THE COURT: So I guess this will just sit for a long more time.

MR. ROSS: Right.

THE COURT: But I don't -- I'm not opposed to ordering the mandamus, but I don't think that I have the evidence that I need to until the decision about the unconstitutionality of this provision is final and the Board still refuses to give Dr. Messonnier the complaint, assuming it's final in the way I believe it should be. Right?

Does that make sense?

MR. BRYANT: Sure.

THE COURT: Okay. So if you want to think about that for a minute and tell me why I'm wrong, I'll listen to you, but that was my take on it was that we expect and assume all state agencies to follow the law. I'm telling them the law is something different. They have appellate rights which will postpone their compliance, and that's fair to everyone, right, I mean it's inconvenient but it's fair. And then eventually some day they will comply or someone will tell me I'm wrong, one of the two.

MR. ROSS: Yes, Your Honor, I agree. I would never advise the Board to violate --

THE COURT: Of course not.

MR. ROSS: -- a court order or --

THE COURT: Right.

MR. ROSS: And they wouldn't.

MR. BRYANT: Sure.

I mean, the only thing I'm thinking, and Mr. Ross has duly acknowledged, there ain't a whole lot of cases on mandamus. The only issue I was thinking in filing that concurrently was, you know, is it something that we mandatory have to file if the law says and, you know, I'm not hearing him say, you know, they would ignore that, so I can probably live with that.

THE COURT: I think you can always bring it back it me --

MR. BRYANT: And I think I could, too.

THE COURT: -- if it gets to that point.

MR. BRYANT: I'm just trying -- when I filed this case I was trying to --

THE COURT: No, you did anything -- I don't think any of you have done anything wrong in the filings, I'm not suggesting that. I'm just saying --

MR. BRYANT: Well, I'm a little embarrassed about the typos, but you know.

THE COURT: Okay. I think I might want to tighten up number 2, let's think about that, because it just says, the rules and the actual and threatened

application thereof.  And I haven't -- do these rules specifically refer only to this, what do you call it, ISC process and not beyond that?

MR. ROSS:  Yes, Your Honor, I believe that's the case.  So, we're talking about 28 and 29.

THE COURT:  Yes.  They don't do anything extra there.  Because I don't want to --

MR. BRYANT:  28, in all fairness, 28 I think is significantly unchanged.  29 is the big one that's -- because the -- as I read this correctly, the -- oh, this is not correct, I apologize.

MR. ROSS:  29 is the ISC rule itself.

THE COURT:  Okay.

MR. BRYANT:  Mr. Ross, do you have the current version or the 18 version?

MR. ROSS:  Effective -- 28 is the investigation rule, and it's effective May 15 of 2018. And 575.29, the informal conferences rule, is effective May 24 of 2023.

MR. BRYANT:  So, that's not the rule that's in play in this game.

THE COURT:  Do I have the text of those two rules anywhere in my papers up here?

MR. BRYANT:  I don't know that I have provided those, Your Honor, but I'll certainly --

MR. ROSS: I can take these out of my notebook if you want.

MR. BRYANT: But he's got the '23 rule, not the --

THE COURT: Well, I just want to make sure that this order is as narrow as it should be and does not exceed the scope of the dispute in front of me. And since I don't have the TAC rules right in front of me, 28 and 29, to make sure that they are -- they don't -- I'm not -- so, for example, if they also include rules about -- let me see. I haven't read them so I don't know exactly what they say.

So, if there's a provision that says the Board can investigate and keep it private and dismiss, period, that I'm not -- that's fine. I'm okay with that rule. It's only when you move to this hearing, informal hearing, as you guys call it, that I have a problem. So, I'm just trying to make sure the rule doesn't -- I don't want to take out anything that is okay.

MR. ROSS: Your Honor, I think that's actually in the statute, and it's 80 -- well, we've been talking about it today, 801.207(b) as in boy.

THE COURT: Yes.

MR. ROSS: No, I'm sorry, I'm sorry, I apologize. It's 208 -- 801.408. Yeah, that's where

that language is that says -- 801.408(c) talks about the Board members and the committee shall recommend enforcement action at the informal proceeding, and that's for a complaint required medical expertise. But I think this operative language is actually in the statute, I don't think it's in the rule.

THE COURT: So, when you look at the proposed order at number 2, both number 2's, are you comfortable with that language, knowing you disagree, or do you think I'm going to be causing a problem that I don't intend to cause?

MR. ROSS: So, the -- I guess actually the finding of number 2 on page 2 and then the actual decree language in paragraph 2 -- well, we're talking about 575.28 and 29. And 28, I mean this is effective 2018, it says that the respondent gets notice of the projected time requirements of the complaint, and I don't think that's really -- I don't think that that's really in play here. I think 29 is the rule that addresses specifically informal conferences, and so I think that's the rule in question.

But again, that rule doesn't -- I mean that rule really doesn't really say anything about -- about the complaint and the complaint not being confidential, that gets back to 207(b).

**APPENDIX TAB C**

THE COURT: Uh-huh.

MR. ROSS: And I guess I understand the Court's ruling would be that it's the complaint itself has to be provided or information about the complaint has to be provided.

MR. BRYANT: Your Honor, if I may.

THE COURT: Well, I think that --

MR. BRYANT: Actually, I'm just going to suggest, you get a copy of the rules in Plaintiff's Exhibit Number 2.

THE COURT: You're going to suggest that I do what? I'm sorry.

MR. BRYANT: I'm sorry?

THE COURT: You suggest that I do what?

MR. BRYANT: You suggested that you didn't have a copy of the rule, but when I look at Plaintiff's Exhibit Number 2, the second page of Plaintiff's Exhibit Number 2 appears to be from the Board, a copy.

THE COURT: Oh, good. No, I just asked if I had it --

MR. BRYANT: And I was --

THE COURT: -- so I could find it. Here it is. Okay.

MR. ROSS: I missed that. I apologize, Your Honor.

**APPENDIX TAB C**

THE COURT: All right. So, for example, (a) is okay.

MR. BRYANT: Yes, ma'am.

MR. BRYANT: So they're all fine except that they need to -- he needs to get the actual complaint.

MR. BRYANT: Correct.

MR. ROSS: And that goes back to 801.207, where --

THE COURT: That's the law, right?

MR. ROSS: Yeah.

THE COURT: And so maybe I need to work on the order myself a little bit. But I'm going to remove 3 under Findings and 3 and 4 under orders, as we've discussed. I don't think we need those. But maybe I need to change the findings a little bit to -- well, no, let me read it again, now that I've read that.

Okay. The Board rules -- I don't know what 28 says, but 29 does fail to provide Plaintiff with actual notice of the complaint against him, including the specific factual allegations thereof. Because it only requires a statement of the alleged violations.

MR. ROSS: And --

THE COURT: But maybe I should -- maybe I should put that in the language in here.

MR. ROSS: 575.29(d) says the Board shall provide the complainant respondent with reasonable notice of the date, time and location.

THE COURT: No, it says informal conferences regarding complaints requiring medical expertise shall be conducted by an informal conference panel comprised of two veterinarian board member and one public board member.

There's no date on this page, so I don't know, I guess I'm assuming this is the one in effect during the years at question.

MR. BRYANT: This is the one that came with the 2021 letter.

THE COURT: Okay. Then that's the right one.

MR. BRYANT: Yes, that's why it's part of the exhibit. And that's consistent with my research.

THE COURT: I think that that's right.

So, I'm -- I can add a little more explanatory language to the order, or not. I think, you know, you're going to re-argue the entire thing again, so you guys can explain. But why don't I just say this, okay --

MR. ROSS: I think the rule is really -- 575.29, the way I read it, the current or the --

THE COURT: The previous version?

MR. ROSS: Yeah, I just don't think that says anything about furnishing a complaint.

THE COURT: Well, in (a) it just says alleged violations, right?

MR. BRYANT: It's the absence in (a), what's not to be provided.

THE COURT: Yeah.

MR. BRYANT: And the practical application of that, which is what we're here about.

THE COURT: Uh-huh.

MR. ROSS: Again, I think it just goes all the way back to the statute every time, but.

And there's not a cause of action, Your Honor, for failure to adopt a rule in Texas. The court just looks at the rule and is it unconstitutional, does it conflict with the statute, et cetera. But there is no cause of action for a failure to adopt a rule or to amend a rule that I'm aware of.

THE COURT: I think I will do this: Number 2, the findings says Board rules, blah, blah, blah, and all Board practices, formal and informal. And then I think I would add, because they do not provide for the full complaint to be disclosed to the Respondent, comma, fail to provide Plaintiff, et cetera.

**APPENDIX TAB C**

No other changes. So that I'm clear about which part is the problem.

MR. BRYANT: Very good.

MR. ROSS: And I'm sorry, Your Honor, can you say that again?

THE COURT: Absolutely. So, number 2, Board rules, specifically including 22 TAC 575.28 and 29, 2018, and all Board practices, formal and informal, comma, because they do not provide for the full complaint to be disclosed to the Respondent, comma. No other changes.

If you could send my office this in Word so that I don't have to sign a real messy one.

MR. BRYANT: I can -- I happen to have it.

THE COURT: Great.

MR. BRYANT: I can probably send it to Shannon right now, if my email will work.

THE COURT: That would be wonderful.

MR. ROSS: I assume, Your Honor, on the findings and the order that number 1 and 2 stay in.

THE COURT: So, number 1, looks right to me. And the order on number 2 is more limited, so I think it works also because it only discusses failing to provide actual notice of the complaint. Actually it's -- yeah. So, that's -- that's weird. I need this

in Word, I'm going to rewrite it a little bit.  Because that actually reads more like a finding.  So, I'm going to play around with it, but.

MR. BRYANT:  I'm sending it to Shannon right now, Your Honor.

THE COURT:  Okay, great.

MR. ROSS:  I would like to --

MR. BRYANT:  I'm copying you, of course.

THE COURT:  I hope so.

Okay.  All right.

MR. BRYANT:  I have been subject to jail now.  And a grievance committee.

THE COURT:  Yeah.

Okay, then I think that's everything.  I'm going to keep that, that's our exhibits, everything.

MR. BRYANT:  Thank you, Your Honor.

MR. ROSS:  Thank you, Your Honor.

THE COURT:  Thank you both very much, and I appreciate your hard work.

MR. ROSS:  May we be excused?

THE COURT:  Yes, everyone is excused.

(End of proceedings.)

REPORTER'S CERTIFICATE

THE STATE OF TEXAS          )

COUNTY OF TRAVIS          )

I, Alicia DuBois, Official Court Reporter in and for the 459th District Court of Travis County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the Proceedings truly and correctly reflects the exhibits, if any, offered in evidence by the respective parties.

WITNESS MY OFFICIAL HAND this, the 17th day of July, 2024.

*/s/ Alicia DuBois*
Alicia DuBois, CSR
Texas CSR 5332
Exp. Date:  1/31/26
Official Court Reporter
459th District Court
Travis County, Texas
1700 Guadalupe
Austin, Texas 78701
(512) 854-9301

**APPENDIX TAB C**

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jeff Lutz on behalf of Ted Ross
Bar No. 24008890
jeff.lutz@oag.texas.gov
Envelope ID: 95439006
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: 2024 1218 Appellants Brief
Status as of 12/18/2024 9:35 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Donald Ferrill | 784047 | dferrill@WhitakerChalk.com | 12/18/2024 9:31:43 AM | SENT |
| Joe Bryant | 3280550 | kbryant@whitakerchalk.com | 12/18/2024 9:31:43 AM | SENT |
| Jeff Lutz | | jeff.lutz@oag.texas.gov | 12/18/2024 9:31:43 AM | SENT |
| Ted Ross | | ted.ross@oag.texas.gov | 12/18/2024 9:31:43 AM | SENT |